IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYNN R. NELSON,<br><br>                    Plaintiff,<br><br>          vs.<br><br>BLUE CROSS AND BLUE SHIELD OF NEBRASKA,  CONAGRA FOODS, Inc. as Sponsor of the ConAgra Foods, Inc. Welfare Benefit Wrap Plan; and CONAGRA FOODS EMPLOYEE BENEFITS ADMINISTRATIVE COMMITTEE, as Administrator of the ConAgra Foods, Inc. Welfare Benefit Wrap Plan;<br><br>                    Defendants. | **8:14CV228**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on motions for summary judgment filed by defendants ConAgra Foods, Inc., and ConAgra Foods Employee Benefits Administrative Committee (hereinafter, collectively, "ConAgra"), Filing No. 50, and defendant Blue Cross and Blue Shield of Nebraska (hereinafter, "Blue Cross"), Filing No. 53.  This is an action for judicial review of an administrative determination denying benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*  The plaintiff alleges defendant wrongfully denied her claim for benefits under ConAgra's medical plan.

Nelson alleges that she underwent inpatient surgery at Nebraska Methodist Hospital ("Methodist") on April 18, 2012, to repair two hernias.  She alleges her surgery is covered under the medical plan and contends that defendants Blue Cross and ConAgra have wrongfully denied coverage.  She alleges that Methodist charged

$21,842.06 for the services and defendants paid only $64.87 of that bill.   Methodist has

billed Nelson for the balance of the charges.   *See* Filing No. 19, Amended Complaint.

In its motion for summary judgment, ConAgra first argues that plaintiff's action is

barred because she failed to exhaust administrative remedies.   Further, it argues that

the plaintiff's claim should be reviewed under the deferential abuse of discretion

standard and contends that the record shows ConAgra did not abuse its discretion in

connection with the denial of the plaintiff's claim.   Blue Cross similarly argues that the

plaintiff's claim is barred by failure to exhaust and contends that its denial of the

plaintiff's claim was not an abuse of discretion.   It further contends that ConAgra is the

proper party defendant because it has final authority to determine eligibility for plan

benefits.

I.      FACTS

A.      Background

The facts are gleaned in part from the parties' statements of undisputed facts.

*See* Filing No. 52, ConAgra's Brief at 2-8; Filing No. 54, Blue Cross's Brief at 2-8; Filing

No. 59, Plaintiff's Brief at 1-6; Filing No. 61, Plaintiff's Brief at 1-6; Filing No. 73, Blue

Cross Reply Brief at 1-5; Filing No. 75, ConAgra's Reply Brief at 1-5.   The parties agree

that plaintiff Nelson was a participant in, and had health benefits under, the ConAgra

Foods, Inc. Welfare Benefit Wrap Plan ("the Plan").   The parties agree that the Plan is

self-funded by ConAgra and ConAgra is its Plan Sponsor and Plan Administrator.   Blue

Cross is not an "insurer" of any benefits under the Plan.   ConAgra has delegated to Blue

Cross the discretionary authority to construe and interpret the terms of the medical plan

and make final determinations concerning availability of benefits under the medical plan.

2

The defendants have jointly filed an "administrative record" which includes a copy of the ConAgra Foods, Inc. Welfare Benefit Wrap Plan Document (the "Wrap Plan Doc."), and the ConAgra Foods Medical Plan Summary Plan Description ("SPD").  *See* Filing No. 42, Administrative Record (Restricted) ("Adm. R.").  Aside from those plan documents, the administrative record consists of 38 pages of Blue Cross internal records.[1]  *Id.*

Blue Cross has also filed the affidavits of Andrew Sloan, together with attached records of Highmark, Inc., Filing No. 49 at ECF pp. 1-3, Affidavit of Andrew Sloan ("Sloan Aff.").  Blue Cross contracts with Highmark, Inc., to assist with the processing of claims for the ConAgra Foods Plan.  *See* Filing No. 74-1, Supplemental Affidavit of Andrew Sloan ("Sloan Supp. Aff.") at 1.   Documents attached to the Sloan affidavits include "Outsource Reports," various computer screen shots, and "inquiry snapshots" that apparently document telephone calls.  Filing No. 49-1, Sloan Aff., Ex. A and Filing No. 74-1, Sloan Supp. Aff., Ex. A.  The documents maintained by the contracting entity are documents connected to the claim and are properly considered part of the administrative record.[2]

---

[1] The administrative record jointly filed by the defendants is exceedingly sparse.   It consists of a Methodist billing statement, *id.* at 1, Methodist Health Insurance Claim forms, *id.* at 2-4, an explanation of benefits, *id.* at 5-8, a PPO Benefit Coding Summary, *id.* at 10-18, a Summary of PPO Benefits, *id.* at 19-20, a sheet with the member's and provider's address information, *id.* at 21, a document that appears to be a copy of an envelope with a notation "see below for address information," *id.* at 22, a letter dated April 20, 2012, *id.* at 23-28, a document captioned "APPEALS/GRIEVANCES/COMPLAINTS INQUIRY", *id.* at 29, a demand letter from the plaintiff's attorney and an attached statement from Methodist Hospital, *id.* at 30-36, and correspondence from Blue Cross in response to that letter, *id.*  at 37-38.  There are no medical records in the administrative record.  *See generally id.*

[2] The court is troubled by the fact that these records were not included in the administrative record filed at the outset, but were produced in response to the plaintiff's contentions in response to the defendants' summary judgment motions.

B.      The Plan

The Wrap Plan Document defines the Plan as follows:  "Plan means the

ConAgra Foods, Inc. Welfare Benefit Wrap Plan Document."  Filing No. 42 at ECF p.

44, Admin. R., Wrap Plan Doc.  It names ConAgra Foods, Inc., as the "Plan Sponsor"

and as the "Plan Administrator," "unless some other entity is designated in a

Component Document, in which case, such other entity shall be the Administrator or

Plan Administrator with respect to that Component Documents benefits."  *Id.* at 43.

"Claims administrator" is defined in the Wrap Plan Document as:

> the Insurer, third party administrator or other entity appointed by the
> Sponsor or the entity or individual identified in the Component
> Document to receive and review claims for benefits under the Plan;
> to determine what amount, if any, is due and payable; to make
> appropriate disbursements to persons entitled to benefits under the
> Plan; and to review and determine denied claims . . . ; provided,
> however, that in the case of self-insured benefits, such
> determinations shall be subject to review by the Plan Administrator
> or its delegate, in accordance with Article V."

*Id.*  Article V, in turn, provides:

> *Except to the extent that such duties have been delegated to an Insurer, a*
> *third party administrator under a Contract or some other designee*, the
> Administrator shall have sole discretionary authority with respect to
> determining a Participant's claim for benefits under the Plan's self-insured
> benefits as provided in the applicable Component Document, including but
> not limited to determining eligibility to participate, rendering final
> determinations regarding medical necessity, determining and authorizing
> payment of benefits, and any duties described in Section 5.3.

*Id.* at 54 (emphasis added).   Section 5.3 sets out the duties of the plan administrator,

including "the general day-to-day responsibility for the administration of the Plan, except

to the extent that such responsibility has been delegated to an Insurer or third party

administrator, as described above."  *Id.*

4

With respect to a medical benefit denial, the claims administrator is required to "issue a written decision" and to provide a copy of the review determination to the claimant setting forth:

> the specific reason or reasons for the adverse determination, reference to the specific Plan provisions on which the benefit determination is based, a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of, all relevant information, a statement informing the claimant about the right to bring a civil action under Section 502(a) of ERISA, and a description of any voluntary appeal procedures offered by the Plan, if any. The notice also shall include an explanation of the internal rules or criteria, and scientific or clinical judgment, used as a basis for the denial (or a statement that a copy of such information is available to the claimant free of charge), a statement that the claimant has the right to obtain information about the voluntary appeals process, if any, and information as to how the claimant may obtain information about a voluntary alternative dispute resolution options from the Department of Labor or state regulators.

*Id.* at 64.  The Wrap Plan Document also states that a claimant whose claim for Health benefits under the Plan has been denied "shall have the right to appeal."

*Id.* at 63.  The Wrap Plan Document further provides that:

> A Participant, Dependent or beneficiary may bring a legal action with respect to a claim only if (1) all claim procedures described in the applicable Component Document or, if applicable, this Article VII have been exhausted, and (2) the action is commenced within ninety (90) days after a final decision on review is received by such Participant, Dependent or beneficiary.

*Id.* at 75.

The Medical Plan SPD similarly provides that Blue Cross is obligated to provide claimants a written notice of the denial of a claim within 30 days of receipt of the claim. Filing No. 42 at ECF p. 132, Admin. R., SPD.  The SPD requires the notice of adverse

decision on appeal to include "the specific reason or reasons for the adverse benefit

determination, [and] the procedure for appealing the decision"  *Id.* at 136.

Under the heading "Who Determines My Benefits?," the SPD provides:

The Plan Administrator has appointed BCBS as an ERISA fiduciary
with respect to the Plan, except for the portion of the Plan that
relates to prescription drug benefits, for the purpose of providing a
full and fair review of claims under the Plan, and for certain other
contracted-for-duties.  To this end, the Plan Administrator has
delegated to BCBS the discretionary authority to construe and
interpret the terms of the Plan and to make final, binding
determinations concerning availability of benefits under the Plan.

Id. at 131.  Under the heading "Administrative Information," the SPD states that

[t"]he plan administrator is the ConAgra Foods Employee Benefits Administrative

Committee" and that its responsibilities are:

The Committee, *or its designee*, as the Plan Administrator, shall
have the sole discretion and authority to control and manage the
operation and administration of the Plan.  The Committee, or its
designee, shall have complete discretion to interpret the provisions
of the Plan, make findings of fact, correct errors, supply omissions,
and determine the benefits payable under the Plan.  All decisions
and interpretations of the Committee, or its designee, made in good
faith pursuant to the Plan shall be final, conclusive and binding on
all persons, subject only to the Plan's claims procedure, and may
not be overturned unless found by a court to be arbitrary and
capricious.

*Id.* at 155 (emphasis added).  Further, the SPD provides:

The Plan is administered according to the provisions of service
agreements with BCBS . . . [which] provides administrative claims
payment services only and does not assume any financial risk or
obligation with respect to claims.  BCBS has also been appointed
the Plan's ERISA claims fiduciary, for the purpose of providing a full
and fair review of claims and other specified functions. To this end,
the Plan Administrator has delegated to BCBS the discretionary
authority to construe and interpret the terms of the Plan, and to
make final, binding determinations concerning availability of
benefits under the Plan.

6

*Id.*

The Medical Plan SPD includes a list of health benefits that are payable for reasonable and necessary care, as well as a list of items that are not covered.  *Id.* at 113-119.  The SPD states that the Medical Plan does not cover "surgery for morbid obesity" or "bariatric surgery."  *Id.* at 117.

The Administrative Record also contains an eight page document entitled "Effective 1/1/2012, Foods, Inc.—Non-Grandfathered, PPO Benefit Coding Summary-HSP1A (Actives-Salaried)."  *Id.* at 10-20.[3]  In that document, in a column labelled "other services," "bariatric surgery" is listed as "not covered" under PPO In-Network or PPO Out of Network.  *Id.* at 16.  Further, in a column headed "Conditions," "obesity" is listed as "not covered."  *Id.* at 18.  A 2-page document entitled "Summary of PPO Benefits" also states that "bariatric surgery" is not a covered benefit.  *Id.* at 19.

 In support of its motion for summary judgment, ConAgra submits an Administrative Services Agreement ("ASA") between ConAgra and Blue Cross.  Filing No. 55-1, Index of Evid., Ex. 2, Affidavit of Jerome Rewolinski ("Rewolinski Aff."), Ex. 1, ASA Part 1;  Filing No. 55-2, *id.,* Ex. 1, ASA Part 2.  In the ASA, Blue Cross agrees to provide claims administration services for the medical plan.  Filing No. 55-1 at ECF p. 7, ASA at 5.  Under the ASA, Blue Cross is responsible for  administering and determining initial claims for benefits and related appeals" and Blue Cross "acknowledges it is a

---

[3] A notation at the bottom left of the document states "HSP1A, Revised 10-16-2012, Page 1 of 9." The source, purpose or effects of this document are not clear to the court. It is dated subsequent to the events at issue. The document is not part of or attached to the SPD and does not appear to be a document provided to plan members. It appears to be an internal document containing insurance industry jargon that Blue Cross may have relied on in making its determination. *See* Filing No. 52, ConAgra Brief at 4 (stating that the "Medical Plan also has a PPO Benefit Coding Summary and Summary of PPO Benefits, which are used to assist in determining whether claims for benefits are payable").

named fiduciary of the Plan "to the extent [Blue Cross] has been delegated the responsibility to review valid appeals of adverse benefit determinations[.]"  *Id.* at ECF p. 12, ASA at 10.  As Plan Sponsor, ConAgra is responsible under the ASA for:  "(a) establishing standards governing the eligibility of individuals to participate in the Plan; (b) determining the eligibility of each individual who seeks to enroll in the Plan; and (c) resolving all disputes relating to Plan eligibility."  *Id.* at ECF p. 10, ASA at 8.  Also, the ASA provides that in the event of litigation involving a claim for benefits commenced by a member of the Plan, ConAgra, as Plan Sponsor, is "responsible for the full amount" of any Benefits paid as a result of such litigation.  *Id.* at ECF p. 26.

C.     The Claim

The bill submitted by Methodist to Blue Cross on or about May 29, 2012, sought payment for services related to the plaintiff's inpatient hospitalization from April 18, 2012, through April 21, 2012.  Filing No. 42 at ECF p. 1, Admin. R. at 1.  Upon review, Blue Cross determined that Methodist's bill was related to the plaintiff's bariatric surgery because the claim included International Classification of Diseases, Ninth Revision-Clinical Modification (ICD-9-CM) codes for bariatric surgery status and obesity status (V4586), and an obesity diagnosis code (V8530).[4]  *See* Filing No. 42 at ECF p. 1, Claim

---

[4]These codes are from the International Classification of Diseases, Ninth Revision—Clinical Modification (ICD-9-CM) coding system which is a medically-recognized ranking of diagnoses.  *See Little Company of Mary Hosp. v. Shalala*, 24 F.3d 984, 986–87 (7th Cir. 1994); *Miller v. Colvin*, No. 13-CV-774, 2015 WL 751597, *4 (N.D. Okla. Feb. 23, 2015); *Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 709 (10th Cir. 2006) (stating that ICD–9 codes refer to "a coding system used to describe the diagnosis or medical condition for which medical services are rendered when Medicare claims are submitted to Medicare carriers.").  The ICD–9–CM "is the official system of assigning codes to diagnoses and procedures associated with hospital utilization in the United States."  CDC's Classification of Diseases, Functioning, and Disability,  http://www.cdc.gov/nchs/icd/icd9cm.htm (last visited September 24, 2015).

Form;  Filing No. 49 at ECF p. 2, Sloan Aff. at 2.  In answer to requests for admission

propounded by the plaintiff, Blue Cross and ConAgra both stated that they reviewed the

administrative record when making the determination as to the plaintiff's claim for

benefits and relied on medical information in the administrative record in making their

decisions.  *See* Filing No. 67-1 at ECF p. 4, Ex. 1, Blue Cross Responses at 3; Filing

No. 70-1 at ECF p. 4, Ex. 1, ConAgra Responses at 3.  The only medical record in the

administrative record jointly filed by the defendants is the Methodist claim form that

shows that "the ICD-9 codes related to Plaintiff's claim for benefits at issue in this

litigation include 55221, 5602, 20400, 2768, 2812, 4019, V4586, 27800, V8530, 5538,

and 2809."  *See* Filing No. 42, Admin. R. at 1; Filing No. 70-1, Answers to Requests for

Admission at 3.

The record shows that Highmark, Inc., also evaluated the claim, pursuant to its

contract with Blue Cross.  *See* Filing No. 74-1 at ECF pp.1-6, Sloan Supp. Aff.  Andrew

Sloan is a supervisor employed by the Nebraska Dedicated Unit for Highmark, which is

a company that contracts with Blue Cross to assist in processing claims for the Plan.

Filing No. 49 at ECF p. 1, Sloan Aff. at 1; Filing No. 74-1 at ECF p.1, Sloan Supp. Aff. at

1.  Sloan states in his affidavit that Highmark's claims processing system for the

ConAgra Foods' Plan "involves a computer program which utilizes language provided

by the Plan Sponsor and Plan Administrator, ConAgra" and includes "language stating

that 'Services and Supplies related to Bariatric Surgery (Planned or Performed) are not

eligible.'"  *Id.* at ECF p.5, Sloan Supp. Aff. at 5.  He also states that "[o]n April 19, 2012,

_____

when Methodist requested authorization for Nelson's inpatient hospital stay it explained that on April 18, 2012, Nelson had surgery *related to complications from* a prior gastric bypass surgery" and that Highmarks' benefits specialists would have relied on the above language when denying Methodist's claim.  *Id.* at 5-6 (emphasis added).

Sloan also states that certain claims relating to the same surgery were paid because the claim forms submitted by Methodist in connection with those services did not contain the diagnosis codes V4586, a bariatric diagnosis code, and V8530, an obesity diagnosis code.[5]  Filing No. 74-1 at ECF pp. 5-6, Sloan Supp. Aff. at 5-6; *see* Filing No. 42 at ECF 2, Admin. R. at 2 (relating to claim for services of Tracy Turrens, M.D.); Filing No. 42, at ECF p. 3, Admin. R. at 3 (relating to services of services of Andrew G. Rasmussen, M.D.)  Those claims were paid in accordance with the Plan's terms.  Filing No. 74-1, Sloan Supp. Aff. at 6; Filing No. 42 at ECF p. 7, Admin. R. at 7.

Documents attached to Sloan's affidavit and identified as true and correct copies of records reflecting telephone communications about the plaintiff's inpatient hospital stay at Methodist, are entitled "Outsource Reports" and contain referral notes, case notes and computer screen shots of contacts in connection with the claim.  Filing No. 49, Sloan Aff. at 2; Filing No. 49-1, Ex. A, Restricted Health Information at 1-11. Highmark's records show that on or about April 20, 2012, Dr. Gary Anthone stated in a phone call with Blue Cross that the surgery was related to prior bariatric surgery.  *Id.*, Ex. A at 1. The documents contain the following cryptic notations:  "Provider requesting

---

[5] A "V-code" is a supplementary classification of factors influencing health status and contact with health services. 1 ICD-9 CM Table of Diseases and Injuries 18 Summary, Westlaw (Database updated March 2014).  V-codes generally indicate status, history, aftercare or follow-up. *Id.*

standard specialty specific appeal.  jrj 4-19-12 case assigned to Dr. Ritz no attachment."
*Id.* at 1.  "Following appended Apr 20 2012 10:42 by RITZ, STEPHEN — Denied.  CR:
Coverage of inpatient admission for surgery is not approved based upon summary of
Covered Benefits for member's health plan.  Specifically, complications from gastric
bypass surgery are not a covered benefit under the member's insurance product[,]" and
"PER POLICY:  Coverage for the requested procedure/service is not approved as
review of Summary of Covered Benefits indicates that this is not a covered benefit
under the member's insurance product." *Id.*  Case notes dated April 19, 2012, state
"[v]erified with Joe Merante- benefit spec. that this group does not have the benefit for
gastric bypass surgery or complications from gastric bypass surgery."  *Id.* at 3.  On April
20, 2012, Highmark employee Cynthia Wisniewski noted

> [c]alled ur and spoke with Mary.  Informed that request for inpt
> admit/surgery was denied by pa as not a covered benefit.  Pt's plan
> does not have coverage for bariatric surgery or the complications of
> bariatric surgery.  Gave her the ref. and recording and benefit
> disclaimers and the p-t-p number.  Informed of appeal rights.*

*Id.* at 2.  Wisniewski noted on April 23, 2012, "[s]poke with Mary at the fac. in ur and
informed her that denied was upheld after a p-t-p review.  Also called md office and left
vmm with recording and benefit disclaimers to have someone call me back reg. pt's
md's request for a standard appeal.  Left ref. and my backline number."  The following
was appended by Wisniewski on April 25, 2012:  "Provider appeal cannot be done as
this is not a covered benefit and informed that member griev. is the next step that can
be done."  *Id.*

The administrative record contains copies of correspondence addressed to the
plaintiff.  Filing No. 42 at ECF 5-9, Admin. R.  A 5-page document dated May 31, 2012,

entitled "Explanation of Benefits" ("EOB") indicates that most charges in connection with the plaintiff's April 18, 2012, surgery were denied for the reason that "[a] precertification/Retrospective review determined this procedure was not medically necessary" and "[t]herefore no payment can be made." *Id.* at ECF p. 7.  The EOB contains language indicating that a claimant could appeal the decision within 180 days of her receipt of the EOB and that she had the right to file a civil action if an adverse benefit determination was made following completion of the internal appeal process.  *Id.* at 9.  Correspondence dated April 20, 2012, states:

> We have completed a review of the information provided to us requesting coverage for services below. Based on our review and your benefit package, it has been determined that this item or service is not eligible for reimbursement because it and all associated charges are excluded from the benefit package.

*Id.* at ECF p. 23.  It also states "Your plan does not have coverage for complications from bariatric surgery."  *Id.*  Blue Cross cannot identify the person or persons who sent the correspondence, but states "[d]enial notification letters are produced via a clinical information system automation process" in conformity with established "policies, procedures and turn-around time standards for written denial notifications issued to Plan participants."  Filing No. 74-1 at ECF 3, Sloan Supp. Aff. at 3; *see* Filing No. 88-1 at ECF 3, Ex. 1, Blue Cross Answers to Interrogatories at 2.

The record shows that on June 16, 2014, the plaintiff's attorney sent Blue Cross and the ConAgra Employee Benefits Administrative Committee a demand letter challenging the denial of the plaintiff's claim for benefits.  Filing No. 42 at ECF pp. 30-31.  Correspondence from Blue Cross in response to that letter states:

Please be advised that according to the Employee Retirement Income Security Act of 1974 (ERISA), attorneys are not able to **file an appeal** on behalf of the patient without patient consent.

However, under the terms of the member's PPO agreement, procedures are in place to allow you, with consent from the patient, to file appeals in a fair and timely manner. The Member Appeals Department must receive your request within one hundred-eighty (180) days from the date of the initial benefit determination which according to our records was on May 31, 2012. Because your appeal request was received on June 19, 2014, which is beyond the one hundred-eighty (180) day time frame for filing an appeal, we cannot review it for consideration.

*Id.* at 37 (emphasis in original).

In opposition to the defendants' motions for summary judgment, the plaintiff submits her affidavit, a physician's affidavit, and medical records. Filing No. 60-1, Ex. 1, Affidavit of Anthony D. Bruno, M.D. ("Dr. Bruno Aff."); Filing No. 60-2, Ex. 2, Affidavit of Lynn R. Nelson, ("Nelson Aff."); Ex. A, Admission/Discharge Record; Ex. B, operative report; Ex. C, discharge summary. In her affidavit, Nelson states that she never received or saw the May 31, 2012, EOB or the April 20, 2012, denial letter and that the first time she saw or received those documents was when they were produced in this litigation.[6] Filing No. 60-2, Nelson Aff. at 3. She also states that had she been informed

---

[6] Furthermore, she states that she

never received any written, oral, or electronic notice from any of the Defendants of any of the following: 1) that my claim for benefits arising out of my Hospital Stay had been denied; 2) the specific reason or reasons why my claim had been denied; 3) reference to the specific provisions of my health care plan on which the decision to deny my claim was based; 4) a description of the review or appeal procedures and the time limits applicable to such procedures; 5) any statement that I had a right to bring a civil action following an adverse benefit determination on review; 6) any specific rule, guideline, protocol, or other criterion utilized to deny my claim or any statement that such a rule, guideline, protocol, or other similar criterion relied upon in denying my claim would be provided to me free of charge upon request; 7) an explanation of the scientific or clinical judgment for the determination to deny my claim that applied the terms of my health care plan to my circumstances or a statement that such explanation would be provided to me free of charge upon request.

13

that her claim had been denied and she needed to file an appeal, she would have done so, especially because the defendant paid the charges for the surgeon and anesthesiologist for the April 18, 2012, surgery.  *Id.* at 4.

The operative record from the surgery describes the patient as "status post " a procedure for morbid obesity.[7]  Filing No. 60-2 at ECF 9, Nelson Aff., Ex. B, Operative Report at 1.  The document shows that the weight loss surgery had been performed on September 7, 2011.  *Id.* at ECF 10.  Nelson's  discharge summary from the April 2012 hospitalization contains the following notation:  "FINAL DIAGNOSIS Abdominal pain, large midline incisional hernia with incarcerated omentum, enteroenterostomy site internal hernia with current non-obstructing volvulus, status post the above-named procedures."  *Id.* at ECF 14, Nelson Aff., Ex. C, Discharge Summary at 1 (referring to procedures performed on April 18, 2012).

Dr. Anthony Bruno states in his affidavit that he reviewed "the medical records for Plaintiff Lynn Nelson, consisting of 325 pages, for treatment received at the Nebraska Methodist Hospital from April 18, 2012 to April 21, 2012" and concluded that "Ms. Nelson did not receive bariatric surgery or surgery for morbid obesity at any point between April 18, 2012 and April 21, 2012."  Filing No. 60-1 at ECF p. 3, Dr. Bruno Aff.

---

*Id.* at 3-4.

[7] The term "status post" is "clinical shorthand referring to a state that follows an intervention . . . or condition . . . ."  *McGraw-Hill Concise  Dictionary of Modern Medicine* (2002), http://medical-dictionary.thefreedictionary.com/status%2fpost (last visited September 17, 2015). *See also* 1 Attorneys Medical Deskbook § 5:21, Westlaw (database updated Oct. 2014) (stating status post means "[p]reviously had . . . (e.g., 'status post surgery' means patient recently had surgery).").  Thus, a "status post" notation indicates that a patient had a certain procedure or condition at some point in the past, i.e., his or her status is post (or after) having had a procedure or condition.

at 2.  The diagnosis for which she was admitted to the hospital was a ventral hernia.[8]

*Id.* at ECF p. 3.  The procedure performed on her on April 18, 2012 was an "exploratory

laparotomy with lysis of adhesions, omentectomy, repair of jejunostomy tube site

enterotomy, repair of internal hernia, detorse volvulus and repair large midline incisional

hernia."[9]  *Id.*  Dr. Bruno also opines that the procedures were medically necessary.  *Id.*

at ECF p. 4.

    II.    LAW

Summary judgment is appropriate when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(c). "The inquiry performed is the threshold inquiry of determining whether

there is the need for a trial—whether, in other words, there are any genuine factual

issues that properly can be resolved only by a finder of fact because they may

reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A "genuine" issue of material

fact exists when there is sufficient evidence favoring the party opposing the motion for

---

[8] A ventral hernia is "an abdominal incisional hernia." Stedmans Medical Dictionary 406100, Westlaw (database updated Nov. 2014).  A hernia is a "protrusion of a part or structure through the tissues normally containing it." *Id.* at 405120.  An abdominal hernia is "a hernia protruding through or into any part of the abdominal wall." *Id.* at 405130.

[9] An omentectomy is "resection or excision of the omentum." Stedmans Medical Dictionary 625160, Westlaw (database updated Nov. 2014).  The omentum is "a fold of peritoneum passing from the stomach to another abdominal organ." *Id.* at 625250.  A jejunostomy is an "operative establishment of a fistula from the jejunum to the abdominal wall, usually with creation of a stoma." *Id.* at 462400.  An enterotomy is an "incision into the intestine." *Id.* at 294620.  A volvulus is "a twisting of the intestine or other structure such as in gastric volvulus causing obstruction; if left untreated may result in vascular compromise of the involved intestine or organ." *Id.* at 993990.  A laparotomy is an "incision into the loin." *Id.* at 479620.

a jury to return a verdict for that party.  *Id.* at 251-52. "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004.)

The underlying purpose of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries.  *See also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989); 29 U.S.C. § 1001(b).  Under ERISA, a plan "participant or beneficiary" may bring a "civil action" to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). Plan participants may also recover "other appropriate equitable relief" under 29 U.S.C. § 1132(a)(3).  *CIGNA Corp. v. Amara*, ––– U.S. ––––, ––––, 131 S. Ct. 1866, 1871 (2011) (recognizing that an equitable claim for surcharge, reformation, or estoppel may be permitted in some situations based upon an ERISA fiduciary's breach of a duty towards a covered employee); *see Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 722 (8th Cir. 2014) (recognizing the Supreme Court's decision in *Amara* changed the legal landscape by clearly spelling out the possibility of an equitable remedy under ERISA for breaches of fiduciary obligations by plan administrators).

Potential liability under the ERISA provision authorizing a plan participant or beneficiary to bring an action to recover benefits due under the plan, to enforce his or her rights under the plan, or to clarify his or her rights to future benefits under the plan, is not limited to a benefits plan or the plan administrator.  *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1205–07 (9th Cir. 2011) (en banc).  Claims administrators may be sued as defendants under 29 U.S.C. § 1132(a)(1)(B) and (3).  *See Brown v. J.B.*

16

*Hunt Transp. Servs., Inc.*, 586 F.3d 1079, 1081, 1088 (8th Cir. 2009); *accord Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246 (2000) (holding that non-plan defendants may be sued under those provisions).  A claims administrator who exercises total control over the a plan's benefits denial process, who enjoys "sole and absolute discretion" to deny benefits and make "final and binding" decisions as to appeals of those denials, may be sued as a defendant under § 1132, even with respect to administering a self-funded plan.  *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, No. 14-20-CV, 2015 WL 4940352, at *4 (2d Cir. Aug. 20, 2015) (noting that the statute "admits of no limit . . . 'on the universe of possible defendants'") (quoting *Harris Trust*, 530 U.S. at 246)).

Under ERISA, when a denial of benefits is challenged through judicial review, "the record that was before the administrator furnishes the primary basis for review." *Trustees of Electricians' Salary Deferral Plan v. Wright,* 688 F.3d 922, 925 (8th Cir. 2012); *see also Brown v. Seitz Foods, Inc., Disability Benefits Plan,* 140 F.3d 1198, 1200 (8th Cir. 1998) (suggesting a district court should ordinarily limit its review to the evidence contained in the administrative record).  When reviewing the denial of benefits under an ERISA plan, "the general rule is that review is limited to evidence that was before the administrator." *Atkins v. Prudential Ins. Co.*, 404 Fed. App'x 82, 84 (8th Cir. 2010) (internal quotation marks omitted).  The review of a benefits decision is generally confined to the information available at the time of the claim decision.  *Farley v. Arkansas Blue Cross & Blue Shield*, 147 F.3d 774, 777 (8th Cir. 1998).  However, new evidence may be considered under certain circumstances in order to enable the full

17

exercise of informed and independent judgment.  *Kostecki v. Prudential Ins. Co. of Am.*, No. 4:14-CV-695, 2014 WL 5094004, *1 (E.D. Mo. Oct. 10, 2014).

Although discovery of information outside of the administrative record is generally not allowed, the limitation "does not apply to claims involving ERISA plans when the claims are for equitable relief under § 1132(a)(3) or for equitable estoppel."  *Id.*; *see e.g., Jensen v. Solvay Chems., Inc.*, 520 F. Supp. 2d 1349, 1355 (D. Wyo. 2007) ("Case law does not constrain discovery under ERISA § [1132](a)(3) actions.");  *Vogel v. Anheuser Busch Companies, Inc.*, 2014 WL 3894497, at *1 (E.D. Mo. Aug. 8, 2014) (holding the claimant was "entitled to limited discovery regarding his claims for civil penalties and equitable estoppel").  "This is so because these types of actions 'do not benefit from the administrative process.'"  *Kostecki*, 2014 WL 5094004 at *1 (quoting *Jensen*, 520 F. Supp. 2d at 1355).

When an ERISA plan gives the Plan Administrator discretion to construe ambiguous terms or make eligibility determinations, the decision is reviewed for an abuse of discretion.  *Hankins v. Standard Ins. Co.*, 677 F.3d 830, 834 (8th Cir. 2012). *Jobe v. Medical Life Ins. Co.,* 598 F.3d 478, 481 (8th Cir. 2010); *Bruch,* 489 U.S. 115. When reviewed for an abuse of discretion, "an administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence . . . [which] means 'more than a scintilla but less than a preponderance.'"  *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 717 (8th Cir. 2014)  (quoting *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010) (citations omitted)).  In the Eighth Circuit, courts consider five factors when reviewing an ERISA benefits decision for abuse of discretion:  (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the

interpretation renders any language in the Plan meaningless or internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan. *Shelton v. ContiGroup Co.*, 285 F.3d 640, 643 (8th Cir. 2002).

When a party has a dual role—such as responsibility for both determining eligibility for benefits and also paying those benefits—that role creates a conflict of interest. *Silva*, 762 F.3d at 717; *Manning v. Am. Rep. Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010); *see also  Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008).  In such cases, the Eighth Circuit Court of Appeals "recognizes that this conflict can 'trigger a less deferential standard of review' before reviewing courts." *Silva*, 762 F.3d  at 717-18 (quoting *Tillery v. Hoffman Enclosures, Inc.*, 280 F.3d 1192, 1197 (8th Cir. 2002)). Although the Eighth Circuit "has not definitively articulated what that less deferential standard of review should be, [the Appeals Court has] said that 'a reviewing court should consider that conflict as a factor' when determining if an administrator has abused its discretion." *Id.* (quoting *Manning*, 604 F.3d at 1038).  Also, procedural irregularities may trigger heightened review. *Carr v. Anheuser-Busch Companies, Inc.*, 495 F. App'x 757, 763 (8th Cir. 2012).

When a plan is governed by ERISA, courts "rely on 'the federal common law rules of contract interpretation.'" *Life Ins. Co. of N. Am. v. Von Valtier*, 116 F.3d 279, 283 (7th Cir. 1997) (quoting *Cannon v. Wittek Cos., Int'l*, 60 F.3d 1282, 1284 (7th Cir. 1995)).  Courts "therefore 'interpret the terms of the policy in an ordinary and popular sense, as would a person of average intelligence and experience,' and 'construe all plan

ambiguities in favor of the insured.'" *Von Valtier,* 116 F.3d at 283 Plan language may

only be deemed ambiguous where "it is subject to more than one reasonable

interpretation." *Id.* at 283.

In applying the federal common law, courts must accord a plan term its ordinary,

not specialized, meaning. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir.

1995) ("In fashioning federal common law under ERISA, including principles that govern

the legal effect of plan terms, courts may look to state law for guidance so long as the

state law is not contrary to the provisions of ERISA.")  "[A]s a matter of general

insurance law, the insured has the burden of proving that a benefit is covered, while the

insurer has the burden of proving that an exclusion applies, and these principles too are

applicable in ERISA cases." *Critchlow v. First Unum Life Ins. Co. of Am.*, 378 F.3d 246,

256–57 (2d Cir. 2004) (internal quotation marks and citations omitted).  If a denial is

based on an exclusion of coverage, the plan administrator bears the burden of proving

that the exclusion applies.  *See Nichols v. Unicare Life & Health Ins. Co.*, 739 F.3d

1176, 1184 (8th Cir. 2014);  *Ringwald v. Prudential Ins. Co. of Am.*, 754 F.Supp.2d

1047, 1056 (E.D. Mo. 2010) (stating that when a plan participant is requesting an

ERISA plan benefit, the burden of proof is generally on the plan participant, but, when a

plan administrator is imposing an exclusion, the burden is usually on the plan

administrator to prove that the exclusion applies).  A plan may properly exclude

coverage for weight loss procedures and for complications arising out of those

procedures with unambiguous language to that effect.  *See, e.g., Ellison v. Blue Cross

and Blue Shield of Mississippi*, 529 F. Supp. 2d 620, 622-23 (S.D. Miss. 2007) (stating

that no reasonable person reading the plan, which stated it did not cover "any surgical

20

treatment" for "morbid obesity" or any "[c]harges for all medical complications which arise as the result of the Member receiving non-covered medical, surgical or diagnostic services" would have difficulty determining that it would not cover later surgery that corrected complications from an earlier one); *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 463 (7th Cir. 2010) (involving a policy that excluded coverage for both the surgical treatment of morbid obesity and any services "related to" such a non-covered treatment); *Kuhn v. Retirement Bd.*, 343 P.3d 316, 319 (Utah Ct. App. 2015) (involving a medical plan that excluded "complications that occur as a result of non-covered or ineligible surgery").

Under ERISA, the plan administrator must distribute a summary plan description to all participants. 29 U.S.C. § 1022; *Silva*, 762 F.3d at 721. "[T]he summary plan description's objective is to provide 'clear, simple communication' that states the terms and conditions of the Plan." *Silva*, 762 F.3d at 721 (quoting *Amara*, 131 S. Ct. at 1877). "ERISA's disclosure provisions were enacted to 'ensur[e] that the individual participant knows exactly where he stands with respect to the plan,' and the regulations promulgated under ERISA are designed to achieve that goal." *Leyda v. AlliedSignal, Inc.*, 322 F.3d 199, 208 (2d Cir. 2003) (quoting *Bruch*, 489 U.S. at 118) (internal quotation marks omitted). ERISA's requirements for furnishing SPDs to plan participants are quite demanding. *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 578 (6th Cir. 2010).

The ERISA statute and regulations describe the publication and disclosure requirements that apply to SPDs. *See* 29 U.S.C. § 1024(b); 29 C.F.R. 2520. The statute requires the summary plan description to be "'written in a manner calculated to

be understood by the average plan participant,' and it must contain, among other requirements, 'circumstances which may result in disqualification, ineligibility, or denial or loss of benefits.'" *Silva*, 762 F.3d at 720-21 (citations omitted) (quoting 29 U.S.C. § 1022(a) and (b)). The summary plan description must be "furnished" by the plan administrator to the plan participants by a method or methods of delivery likely to result in full distribution, and the administrator is required to use measures reasonably calculated to ensure actual receipt of the material by plan participants. *Id.* at 721. With respect to electronic distribution, the administrator must take appropriate and necessary measures reasonably calculated to ensure that the system for furnishing documents results in actual receipt of transmitted information (e.g., using return-receipt or notice of undelivered electronic mail features, conducting periodic reviews or surveys to confirm receipt of the transmitted information). 29 C.F.R. § 2520.104b–1(c)(1)(i) & (i)(A). In addition, the plan administrator must ensure that notice is provided to each participant . . . at the time a document is furnished electronically, that apprises the individual of the significance of the document when it is not otherwise reasonably evident as transmitted (e.g., the attached document describes changes in the benefits provided by your plan) and of the right to request and obtain a paper version of such document. 29 C.F.R. § 2520.104b–1(c)(1)(iii).

A Plan Sponsor breaches its fiduciary duty to act in the interest of plan participants when it fails to provide a participant with necessary information regarding the Plan. *Silva,* 762 F.3d at 721. The Supreme Court has stressed "[t]he relevant regulations ... establish extensive requirements to ensure full and fair review of benefit denials." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220 (2004) (citing 29 C.F.R. §

22

2560.503–1).  The regulations "'sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits.'"  *Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 893 (8th Cir. 2009) (quoting 29 C.F.R. § 2560.503–1(a)).

ERISA's exhaustion requirement finds its genesis in 29 U.S.C. § 1133, which provides:

> In accordance with regulations of the Secretary [of Labor], every employee benefit plan shall—
>
> > (1) provide adequate notice in writing to any participant ... whose claim for benefits under the plan has been denied . . . [and]
> >
> > (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.  To the extent the statute is ambiguous, § 1133's disclosure requirements should be construed broadly, because ERISA is remedial legislation and should be liberally construed to effectuate Congress's intent to protect plan participants. *See Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1040 (8th Cir. 2006).

On its face, § 1133 only imposes an affirmative duty upon ERISA-governed plans to provide plan participants with appropriate notice and review—it "does not contain an express requirement that employees exhaust contractual remedies prior to bringing suit." *Wert v. Liberty Life Assurance Co. of Boston*, 447 F.3d 1060, 1062 (8th Cir. 2006) (quoting *Conley v. Pitney Bowes*, 34 F.3d 714, 716 (8th Cir. 1994)).  "Nonetheless, federal courts have universally construed § 1133 to require exhaustion." *Brown,* 586 F.3d at 1084.  "This judicially created exhaustion requirement 'serves important

23

purposes' and 'enables an employer, or its plan, to obtain full information about a claim for benefits, to compile an adequate record, and to make a reasoned decision,' which is 'of substantial benefit to reviewing courts, because it gives them a factual predicate upon which to proceed.'" *Id.* at 1085 (quoting *Back v. Danka Corp.*, 335 F.3d 790, 792 (8th Cir. 2003)).

However, "[t]he exhaustion requirement is not absolute." *Brown*, 586 F.3d at 1085. "When an ERISA-governed plan fails to comply with its antecedent duty under § 1133 to provide participants with notice and review, aggrieved participants are not required to exhaust their administrative remedies before filing a lawsuit for benefits under § 1132(a)." *Id.*; *see Wert*, 447 F.3d at 1064 (concluding that prior cases recognize "exhaustion [is] not required when notice in compliance with a plan [is] not provided to a claimant . . . or when the available review procedures neither complied with ERISA's fiduciary review requirements nor applied to the specific claimants"). Further, plan participants are not required to exhaust if doing so would prove futile. *Brown*, 586 F.3d at 1085. Under 29 C.F.R. § 2560.503-1(l), a claimant is deemed to have exhausted the administrative remedies available under the Plan if the Plan fails to establish or follow claims procedures consistent with the requirements the statute and the claimant is entitled to pursue any available remedies under 29 U.S.C. § 1132(a) on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim. *Silva,* 762 F.3d at 721.

III.    DISCUSSION

A.    Scope of review

24

As a threshold matter, the court determines that its review is not limited to the administrative record in this case.  The administrative record does not provide a basis from which to make an informed decision in this case.

As noted above, the administrative record in this case is sparse.  The defendants have submitted evidence in support of their motions for summary judgment that supplements the administrative record and the court will consider that evidence in connection with the resolution of issues in this case.  Further, the court will consider the evidence submitted in response to the defendants' motions for summary judgment because the sufficiency of the notice provided to the plaintiff is at issue in this action and the evidence is also relevant to equitable issues.

### B.      Proper Defendant

The plan documents clearly establish that Blue Cross was granted discretionary authority to determine claims and is an ERISA fiduciary under the plan.  Accordingly, Blue Cross is properly subject to suit for benefits and/or equitable relief under ERISA.

### C.      Exhaustion

Although the court agrees that exhaustion of administrative remedies is ordinarily required in ERISA cases, the court finds the plaintiff's failure to exhaust is excused in this case.  As discussed below, the defendants did not provide notice of the denial of the claim that complied with either the requirements of the Plan or conformed to the disclosure requirements under ERISA.

There is a factual dispute with respect to whether the plaintiff received the EOB or the denial letter.  However, that dispute is of no consequence because, even assuming the plaintiff received the communications, the correspondence did not inform

25

the plaintiff of "the specific reason or reasons for the adverse determination," nor did it refer to the specific Plan provisions on which the benefit determination was based. Under the Plan, the notice was required to include an explanation of the internal rules or criteria, and scientific or clinical judgment, used as a basis for the denial. The communications from Blue Cross were vague, inconsistent and contradictory. Each of the two alleged communications stated a different reason for the denial.

The Blue Cross/Highmark records belatedly provided to the plaintiff during this litigation are also contradictory and confusing. Highmark's records show that a provider appeal was not allowed, yet the record reflects some level of review, including input from another physician, in apparent response to the provider's query. Highmark's cryptic notes indicate that the claim was forwarded for a "p-t-p" review, but the record shows neither Blue Cross nor Highmark obtained the patient's medical records. In effect, Blue Cross based its determination, not on medical evidence, but on its own construction of the plan's terms.

The defendants' failure to comply with their duty under § 1133(2) to provide the plaintiff with "a reasonable opportunity . . . for a full and fair review" of Blue Cross's decision to deny benefits excuses the plaintiff's failure to exhaust before bringing suit under § 1132(a). The plaintiff would have been unable, based on this record, to properly prepare an appeal, even if she had been provided notice of her appeal rights. Moreover, the court finds any appeal would have been futile, because the record shows Blue Cross relied on its erroneous interpretation of the Plan and would not have reassessed the claim in any event. Accordingly, the court finds the defendants are not

entitled to a judgment of dismissal based on the plaintiff's failure to exhaust her administrative remedies.

    D.    The Merits

The ultimate issue in this case is whether the defendants abused their discretion in denying the plaintiff's claim.  On review of the record, the court finds that they did. The plan administrator interpreted the terms of the plan inconsistently in that it denied the hospital's claim, yet allowed and paid doctors' claims for the same surgery.

Further, the defendants' construction of the Plan's exclusion of bariatric surgery or obesity treatment as extending to complications of or services related to the non-covered surgery is contrary to the clear language of the Plan.

Both an inherent conflict of interest on the part of defendant ConAgra and procedural irregularities on the part of Blue Cross operate as factors that the court considers in its determination.  ConAgra is the plan sponsor and plan administrator and is also responsible for paying the claims.  It maintains final control over the actions of the claims administrator.  The record also shows that ConAgra may have provided information or input as to construction of the plan's terms.  Blue Cross/Highmark records show numerous procedural irregularities, including, as noted above, inconsistent treatment of claims, furnishing different reasons for the denial and failing to obtain the plaintiff's medical records.

The record shows that the defendants' denial of the plaintiff's claim was arbitrary and capricious.  The plan documents unambiguously provide that bariatric surgery is not a covered benefit, but the plan is silent as to the complications of bariatric surgery.  By its own admission, Blue Cross denied the plaintiff's claim because it was "related to"

27

bariatric surgery.  A procedure "related to" a non-covered surgery is an even broader standard than is a "complication of," "caused by," or "resulting from" the non-covered surgery.  There is no support for such a broad exclusion in the plan documents.  In contrast to the cases cited *supra* at 21, the plan at issue did not explicitly exclude "complications of" non-covered or ineligible surgery.  Giving the plan language its ordinary meaning, a reasonable person would understand the exclusion of bariatric surgery, without any qualifier, to mean that only the bariatric surgery itself was excluded.

The record clearly shows that the plaintiff did not undergo bariatric surgery in April 2012 and did not seek coverage for bariatric surgery or obesity treatment.  It was clear on the face of the documents on which Blue Cross relied in making its decision that the plaintiff was "status-post" bariatric surgery and had been treated for hernias. The defendants have not satisfied their burden to show that the exclusion of bariatric surgery and morbid obesity treatment applies to the plaintiff's claim.

Further, the record shows that Blue Cross erroneously relied on certain procedure codes in denying the plaintiff's claim.  The inconsistent treatment of later claims for the same surgery is explained by coding errors that could have been remedied at any earlier point in the litigation.  Blue Cross, as the medical plan administrator and fiduciary, arbitrarily and capriciously denied the plaintiff's claim for inpatient hospitalization in reliance on procedure codes that were not diagnosis codes, but were provided for background and history.  The process used by the Plan was not consistent with a full and fair review of the plaintiff's claim.

Also, the court finds a remand would unnecessarily prolong the proceeding. There is evidence in the record sufficient to support the finding that the plaintiff is entitled to coverage of the Methodist Hospital claim for inpatient services and the court will order the benefits provided to the plaintiff.  Accordingly,

IT IS HEREBY ORDERED:

1.      The motion for summary judgment filed by Defendants ConAgra Foods, Inc., and ConAgra Foods Employee Benefits Administrative Committee (Filing No. 50) is denied.

2.      The motion for summary judgment filed by defendant Blue Cross and Blue Shield of Nebraska (Filing No. 53) is denied.

3.      Judgment is entered in favor to the plaintiff and against defendants in the amount of $21,613.06, plus prejudgment interest at the legal rate from and after April 21, 2012, and post-judgment interest from the date of this order, together with attorney's fees in an amount to be later determined.

4.      The plaintiff shall file a motion for attorney's fees within fourteen days of the date of this order and the defendants shall have fourteen days thereafter to respond.

Dated this 28th day of October, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge